UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STATE OF CONNECTICUT,<br>    Plaintiff,<br><br>v.<br><br>THE MCGRAW-HILL COMPANIES, INC. and<br>STANDARD & POOR'S FINANCIAL<br>SERVICES, LLC<br>    Defendants. | CIVIL ACTION NO.<br>3:10-CV-00547 (JCH)<br><br><br><br><br><br><br>MAY 7, 2010 |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR REMAND AND FOR COSTS AND FEES

This case must be remanded because there is no diversity jurisdiction. The State of Connecticut brings this action as a sovereign state with the power and duty to enforce compliance with its own laws. As Judges Thompson and Droney recently ruled in two cases where defendants (including S&P[1] itself) made arguments identical to those offered here, only where a state sues as a nominal party with no real interest in the case can a court disregard the well established rule that a state is not a citizen of any state for purposes of diversity jurisdiction. Connecticut has a clear and compelling sovereign interest in this case because Connecticut sues pursuant to express statutory authority to enforce compliance with its own unfair trade practice statutes whenever the State officer charged with enforcing those laws believes they have been violated. As the United States Supreme Court stated, enforcing compliance with the law is "easily identified" as a sovereign interest of any state.

S&P's claim of federal jurisdiction is also defective because it is premised on mischaracterizing the State's Complaint as seeking recovery on behalf of a subset of Connecticut

---

[1] Defendants The McGraw-Hill Companies, Inc. and Standard & Poor's Financial Services, LLC are referred to herein collectively as "S&P".

citizens. The Complaint makes no such claim. The Complaint simply alleges the fact that Connecticut citizens have been harmed by S&P's illegal conduct and that the State is entitled to the equitable remedies expressly provided for by Connecticut law. Nowhere does the Complaint demand that such remedies be paid over to a subset of Connecticut citizens, nor is there any requirement that they be so. Instead, the State sues to protect all Connecticut citizens from S&P's unfair and deceptive trade practices by seeking injunctive relief and to deter future violations of Connecticut law by seeking to deprive S&P of the fruits of its illegal acts.

As Judge Thompson ruled in rejecting the exact same arguments made by S&P in a case very similar to the one at bar: "if the court accepted [S&P's] arguments, it would be recharacterizing the factual allegations in the complaint.... [T]he State is bringing an enforcement action in its sovereign capacity ...." Connecticut v. McGraw-Hill Companies, Inc., 664 F. Supp. 2d 196, 201 (D. Conn. 2009) (Thomson, C.J.) ("S&P I") (granting the State's motion for remand in a case alleging S&P engaged in unfair and deceptive practices when rating state and municipal bonds); see also Connecticut v. Guy Carpenter et al., Docket No. 3:07-CV-00162 (CFD) ("Guy Carpenter") (hearing transcript, copy attached as Ex. A, at 55-56) (granting the State's motion for remand and holding "[t]he Attorney General . . . has a statutory responsibility to respond to requests of the Commissioner of the Department of Consumer Protection to enforce the provisions of [CUTPA] . . ., which he did in this case. See Conn. Gen. Stat. § 42-110m. The defendant's argument that Connecticut is merely representing the interests of the private individuals or that non-sovereign interests predominate in this case is, therefore, incorrect."). Regardless, even if the State's Complaint could be characterized as seeking relief on behalf of a subset of Connecticut citizens, the State still has more than a nominal interest in this case because it is well settled that a state has a distinct and separate quasi-sovereign interest

2

in the well-being of its populace and the honest operation of its markets. See e.g., Guy Carpenter, Ex. A. Hearing Tr. at 52.

Additionally, the Class Action Fairness Act of 2005 ("CAFA") does not provide a basis to remove the State's lawsuit against S&P to federal court. Both the plain language of the statute and CAFA's legislative history make clear that sovereign state actions brought to enforce state law are not class actions.

Finally, the Second Circuit denied appeal petitions filed in both the S&P I and Guy Carpenter cases. See State v. McGraw-Hill Companies, Inc., No. 09-4233-mv (2d Cir. 2010) (copy attached as Ex. B); Connecticut v. Guy Carpenter et al., No. 09-0615-mv (2d Cir. 2009) (copy attached as Ex.C). Because S&P's arguments have already been rejected twice in this district, S&P lacks an objectively reasonable basis to seek removal of the State's case. Therefore, the State seeks attorneys' fees and the costs of litigating this motion. Connecticut should not be required to endure improper removal and months of delay each time it seeks to enforce its own unfair trade practice laws in its own courts.

## I. LEGAL STANDARD

The defendant bears "the burden of demonstrating the propriety of removal." Grimo v. Blue Cross/Blue Shield of Vermont, 34 F.3d 148, 151 (2d Cir. 1994); accord United Food & Comm. Workers Union, Local 919 v. Centermark Prop. Meriden Square, 30 F.3d 298, 301 (2d Cir. 1994) ("Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper"). In ruling on a motion to remand, "all factual and legal issues must be resolved in favor of the plaintiff." Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998).

## II. FACTS

As relevant to this Motion for Remand, the Complaint alleges the following facts. S&P is a credit rating agency regularly providing credit ratings on structured finance securities, including residential mortgage backed securities ("RMBS") and collateralized debt obligations ("CDOs"). See Compl. at ¶¶ 15, 19, 22. S&P rates structured finance securities issued by issuers located within Connecticut and its ratings on structured finance securities are routinely relied on by investors and other participants in the financial markets located within Connecticut. See id. at ¶ 17. S&P represents to the users of its ratings, including consumers in Connecticut, that its ratings on structured finance securities are independent, objective, and not influenced by either S&P's or its clients' financial interests. See id. at ¶¶ 1, 69-100. At all times relevant to the Compliant, these representations were false and S&P knew it. See id. at ¶¶ 2, 100.

S&P knew that its representations of independence and objectivity regarding structured finance ratings were false because S&P's ratings and its rating methodologies were directly influenced by its desire to make more money by continuing to do business with high volume issuers of structured finance securities. See Compl. at ¶¶ 64-68. S&P's desire for financial gain directly influenced its rating methodologies, the ratings that S&P assigned to structured finance securities, and the recommendations that S&P's analysts made to their superiors. See id. at ¶¶ 105-133. Similarly, S&P allowed its desire for increased revenue and market share to influence the manner in which it monitored, or conducted surveillance, on the structured finance securities that it had already rated. See id. at ¶¶ 134-142.

Structured finance ratings consumers were harmed by S&P's unfair and deceptive business practices because they were provided a product or service materially different from what S&P promised to provide. See Compl. at ¶¶ 11. Structured finance securities are opaque

4

investments whose value is difficult to evaluate for even the most sophisticated market participants. See id. at ¶¶ 47-51. As a result, S&P's ratings and its representations of independence and objectivity were particularly important to structured finance security buyers and other market participants in Connecticut seeking to obtain an assessment of the credit risk associated with these investments. See id. at ¶¶ 52-53. S&P is well aware of this fact and specifically intends that purchasers of structured finance securities be primary recipients of the information that S&P's structured finance credit ratings are meant to provide. See id.

At the request of the Connecticut Commissioner of Consumer Protection, the State brings this action in its sovereign enforcement capacity pursuant to Conn. Gen. Stat. § 42-110m to enforce compliance with Connecticut law. See Compl. at ¶ 13. The State seeks statutorily authorized relief in the form of a finding that S&P violated the Connecticut Unfair Trade Practices Act, an injunction prohibiting S&P from continuing to engage in these deceptive and unfair business practices, an accounting, restitution, disgorgement, and civil penalties. See Prayer for Relief.

### III. ARGUMENT

    a. <u>Only Where A State Is A Nominal Party Can A Court Disregard The Rule That A State Is Not A Citizen Of Any State For Purposes Of Diversity Jurisdiction.</u>

"There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction." Moor v. County of Alameda, 411 U.S. 693, 717 (1973); New York v. Gen. Motors Corp., 547 F. Supp. 703, 704 (S.D.N.Y. 1982). Only when a state is acting as a nominal party with no real interest in the case can a court ignore the lack of 'citizenship' inherent in being a sovereign state and look instead to the citizenship of the real parties in interest. Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 460-61 (1980); General Motors Corp., 547 F. Supp. at 704; see also S&P I, 664 F. Supp. 2d at 199. ("the out of state defendant may remove on the basis of diversity

if the state is not the real party plaintiff"). A state is a real party in interest so long as it can "articulate an interest apart from the interests of particular private parties." New York v. Operation Rescue Nat'l, 80 F.3d 64, 71 (2d Cir. 1996).

    b.    <u>The State Is Not A Nominal Party Because It Has A Sovereign Interest In Enforcing Its Own Laws.</u>

Connecticut is more than a nominal party in this action because it is seeking to further its own sovereign interest in enforcing compliance with its own unfair trade practice laws at the request of the State officer tasked with ensuring compliance with those laws.

"[T]he exercise of sovereign power over individuals and entities within the relevant jurisdiction … involves the power to create and enforce a legal code, both civil and criminal…." Alfred L. Snapp & Sons, Inc. v. Puerto Rico, 458 U.S. 592, 601 (1982). Thus, a "state has a sovereign interest in enforcing its own laws." Castillo v. Cameron County, 238 F.3d 339, 351 (5th Cir. 2001) (holding that "[b]ecause the State has a sovereign interest in enforcing its laws, it has a personal stake in appealing [an] injunction that gives the County discretion to violate those laws."); see also Snapp, 458 U.S. at 601 (stating that "[t]wo sovereign interests are easily identified" and one of those interests is "the power to create and enforce a legal code…"); California v. FCC, 75 F.3d 1350, 1361 (9th Cir. 1996) (holding that a state may appeal a federal order preempting state law in order to "vindicate its own sovereign interest in law enforcement…"); Texas Office of Pub. Util. Control v. FCC, 183 F.3d 393, 449 (5th Cir. 1999) (stating that "states have a sovereign interest in 'the power to create and enforce a legal code…'" citing Snapp); California v. United States, 2008 U.S. Dist. LEXIS 21258, at *8 (N.D. Cal. Mar. 18, 2008) (stating that "[a] state's sovereign interest includes the power to create and enforce a legal code.") (copy attached as Ex. D).

Here, Connecticut seeks to enforce its own unfair trade practice laws pursuant to Conn. Gen. Stat. § 42-110m. See S&P I, 664 F. Supp. 2d at 201 (holding that "[T]he State is bringing an enforcement action in its sovereign capacity ...."); [2] Guy Carpenter, Ex. A, Hearing Tr. at 55-56 (holding that "the defendant's argument that Connecticut is merely representing the interests of the private individuals or that non-sovereign interests predominate in this case is, therefore, incorrect."); State v. Mobilia, 1983 WL 14950 (Conn. Super. Ct. June 3, 1983) (stating that these claims "are claims brought by the state in its sovereign capacity under Section 42-110m to enforce the provisions of the act ...") (copy attached as Ex. E); State v. Stephen World of Wheels, Inc., 3 CSCR 374, 374-75 (Conn. Super. Ct. Mar. 23, 1988) (presuming the sovereign nature of actions brought by the attorney general to enforce CUTPA) (copy attached as Ex. F); State v. Acordia, 2008 Conn. Super. LEXIS 1791, at *1 (Conn. Super. Ct. January 9, 2008) (copy attached as Ex. G) (stating that "[t]he state of Connecticut has a powerful weapon to use against those who it believes have engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce in this state: At the request of the commissioner of consumer protection the attorney general may seek an injunction against such conduct and obtain restitution and ... civil penalties."); see also R. Langer, J. Morgan, and

---

[2] In further explaining the import of § 42-110m, Judge Thompson stated that:

> [Section 42-110m] was added to CUTPA in 1975. It has continued to evolve as an enforcement mechanism. In 1984, language was added stating that proof of public interest or public injury shall not be required in any action brought pursuant to ... this section .... In 1994, the section was amended to include reasonable attorney's fees as one type of relief that the court may award. In support of the provision, Connecticut Attorney General Richard Blumenthal referred to the deterrent effect of the enforcement statute in seeking higher civil penalties and awarding attorney's fees.

See S&P I at 196 n.1 (citations omitted).

D. Belt, Connecticut Practice Series: Unfair Trade Practices, § 7.1 Government Enforcement, (2006) (stating that "CUTPA provides for both administrative and judicial enforcement by state officials").

The Complaint expressly alleges that the State is acting in its sovereign enforcement capacity. See Compl. at ¶ 13 (stating "Plaintiff State of Connecticut ... brings this action in its sovereign enforcement capacity pursuant to Conn. Gen. Stat. § 42-110m ...."). And the State is expressly acting at the request of the Commissioner of Consumer Protection, who is tasked with enforcing Connecticut's unfair trade practice laws. See Compl. at ¶ 13 (Plaintiff State of Connecticut ... brings this action ... at the request of Jerry Farrell, Jr., Commissioner of the Department of Consumer Protection for the State of Connecticut."); see also Conn. Gen. Stat. § 42-110m (stating "[w]henever the commissioner has reason to believe that any person has been engaged or is engaged in an alleged violation of any provision of this chapter said commissioner ... may request the Attorney General to apply in the name of the state of Connecticut to the Superior Court for an order . . . permanently restraining and enjoining the continuance of such acts or for an order directing restitution . . . ."); Russell v. Dean Witter Reynolds, Inc., 200 Conn. 172, 182 (1986) (stating that the Commissioner of Consumer Protection "bears administrative responsibility for the enforcement of CUTPA ..."); Skinner v. Till, 1991 Conn. Super. LEXIS 860, at *5 (Conn. Super. Ct. Apr. 16, 1991) (copy attached as Ex. H) (same); Robert M. Langer and David E. Ormstedt, *The Connecticut Unfair Trade Practices Act*, 54 Conn. B.J. 5, 392-93, 397 (1980) (explaining CUTPA's enforcement regime as follows: "[T]here are now three enforcement options available to the state under CUTPA .... The three options are mutually independent and the Commissioner of Consumer Protection has discretion as to which option to utilize.... Section 42-110m authorizes the Commissioner to request the Attorney General to

institute suit in Superior Court against persons suspected of violating the Act.") (copy attached as Ex. I).

Facilitating the enforcement of Connecticut's unfair trade practice laws is what section 42-110m was designed to do. See supra, Fn.1. That is the claim that the State has brought.

    c.    The State Sues To Protect All Connecticut Citizens From S&P's Illegal Conduct And To Deter Future Violations of Connecticut Law.

As it did in S&P I, here again S&P mischaracterizes the State's Complaint as seeking "relief on behalf of an identifiable and circumscribed group of Connecticut citizens." See Notice of Removal at ¶ 5. In fact, nowhere in the Complaint does the State demand relief for a subset of Connecticut citizens. The Complaint simply alleges that Connecticut citizens were harmed by S&P's conduct. The Complaint properly demands statutorily authorized equitable relief on behalf of the State in order to protect all Connecticut citizens from S&P's illegal conduct and to deter future violations of Connecticut law.

"[T]he purpose of CUTPA is to protect the public from unfair practices in the conduct of any trade or commerce." American Car Rental v. Commissioner of Consumer Protection, 273 Conn. 296, 310 (2005); Eder Brothers, Inc. v. Wine Merchants of Connecticut, Inc., 275 Conn. 363, 380 (2005). Additionally, CUTPA "is not just designed to benefit the individual, but it is to deter the type of activity which constitutes a violation of CUTPA." Bocian v. Bank of America, N.A., 2006 Conn. Super. LEXIS 3663, at *16 (Conn. Super. Ct. Dec. 8, 2006) (copy attached as Ex. J); Haley v. Beebe, 2000 Conn. Super. LEXIS 816, at *4 (Conn. Super. Ct. March 27, 2000) (stating "CUTPA is intended to deter unfair trade practices that injure the general consuming public ...") (copy attached as Ex. K); see also Larsen Chelsey Realty Co. v. Larsen, 1995 Conn. Super. LEXIS 1606, at *3 (Conn. Super. Ct. May 26, 1995) (stating "[d]amages for CUTPA violations are also designed to punish and deter such future conduct.") (copy attached as Ex. L);

Lord v. Mansfield, 50 Conn. App. 21, 27 (1998) (noting that CUTPA punitive damages are not merely to deter the defendant, but to deter others from similar conduct).

Recognizing that CUTPA is intended to protect the general public, courts in this district have already rejected the same arguments S&P makes here. In S&P I, the State sued S&P under Conn. Gen. Stat. § 42-110m, seeking redress for the unfair and misleading manner in which S&P rates publicly issued debt. The State alleged that S&P's actions "harmed public bond issuers by forcing them to purchase bond insurance to improve their credit rating or pay higher interest costs on their lower rated bonds." See S&P I, 664 F. Supp. 2d at 197.

S&P removed the State's lawsuit to federal court based on diversity, arguing that the State was seeking relief on behalf of an identifiable subset of Connecticut citizens. See Notice of Removal in S&P I (copy attached as Ex. M). In rejecting S&P's arguments and granting the State's motions to remand, Judge Thompson ruled:

> [I]f the court accepted the defendants' arguments, it would be recharacterizing the factual allegations in the complaints. The defendants seek to have descriptions of the impact of the defendants' alleged action on particular persons treated as the assertion of claims on behalf of those persons . . . The complaints give examples of municipalities that were harmed by defendants conduct. Neither these particulars nor the State's request for relief[3] state . . . that the State is proceeding for the benefit of a circumscribed group of its citizens . . . . Therefore, after a review of the factual allegations and the requests for relief in the complaints, the court concludes that the State is bringing an enforcement action in its sovereign capacity pursuant to 42-110m of CUTPA.

See S&P I, 664 F. Supp. 2d at 201. Judge Thompson recognized that anytime a company engages in deceptive, misleading or unfair trade practices, the misconduct will in all likelihood affect the group of consumers dealing with that company and that it is reasonable for the State to identify those consumers and the affect of the misconduct in its complaint. Such allegations do not mean, however, that the State's lawsuit is brought on behalf of those harmed individuals.

---

[3] The State seeks the same relief here as it seeks in S&P I.

10

Indeed, if such were true, federal courts would have jurisdiction over every CUTPA action filed by the State.

In Guy Carpenter, the defendants similarly removed the State's enforcement action on the premise that the State's claim was brought on behalf of a circumscribed subset of Connecticut citizens. Judge Droney rejected these claims, ruling:

> If the State has a sovereign or a quasi-sovereign interest, it is a real party in interest for diversity purposes.
>
> The Attorney General also has a statutory responsibility to respond to requests of the Commissioner of the Department of Consumer Protection for the State of Connecticut to enforce the provisions of [CUTPA], which he did in this case . . . . The defendant's argument that Connecticut is merely representing the interests of the private individuals or that non-sovereign interests predominate in this case is therefore incorrect . . . . Connecticut seeks damages to the general economy under the Antitrust Act, attorneys' fees and costs under the Antitrust Act, treble damages under the Antitrust Act, restitution and disgorgement of profits under CUTPA, and an accounting to determine the amount of improper fees and compensation paid. The relief sought thus goes beyond addressing the claims of previously injured organizations or individuals . . . The fact that private parties may benefit monetarily from a favorable resolution of this case does not minimize nor negate plaintiff's substantial interest.

See Guy Carpenter, Hearing Tr. Ex. A. at 51-56. Here, the State seeks statutorily authorized relief to protect all Connecticut citizens and to deter S&P and others from engaging in future violations of Connecticut law. Nowhere does the State's Prayer for Relief demand relief for any subset of Connecticut citizens, nor is there anything inherent in the relief that is requested by the State that requires such a result.

The State's Prayer for Relief seeks (1) a finding that S&P violated the Connecticut Unfair Trade Practices Act, (2) an injunction against future violations, (3) an accounting, (4) restitution, (5) disgorgement, and (6) civil penalties. See Prayer for Relief. A finding of violation and an injunction by their very nature benefit all Connecticut citizens. See also Water Resources Commission v. Connecticut Sand and Stone Corp., 170 Conn. 27, 34 (1975) (holding that "an

injunction is designed to deter..."); United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953) (stating that "the purpose of an injunction is to prevent future violations"). An accounting merely seeks to establish the amount of ill-gotten gain received by S&P and thus benefits no one without additional relief. Civil penalties under CUTPA are sought on behalf of the State itself pursuant to the express terms of the statute. See Conn. Gen. Stat. 42-110o(b) ("In any action brought under section 42-110m ... the Attorney General .... may recover, on behalf of the state, a civil penalty ...."). Disgorgement is a remedy not meant to compensate individual victims, but to deter future violations and deprive the wrongdoer of its ill-gotten gains. See, e.g., FTC v. Gem Merch. Corp., 87 F.3d 466, 470 (11th Cir. 1996) (stating that the purpose of disgorgement "is not to compensate the victims of fraud, but to deprive the wrongdoer of his ill-gotten gain"); see also SEC v. Commonwealth Chem Sec. Inc., 574 F.2d 90, 102 (2d Cir. 1978) (stating in the context of securities actions "the primary purpose of disgorgement is not to compensate investors. Unlike damages, it is a method of forcing a defendant to give up the amount by which he was unjustly enriched."). Restitution is similarly not meant to compensate individuals, but to deprive S&P of the fruits of its illegal conduct. See Leisure Resort Technology, Inc. v. Trading Cove Assoc., 277 Conn. 21, 40 (2006) (restitution means "the plaintiff prefers to recover the amount the defendant was enriched by her wrongful conduct as opposed to damages"). Indeed, when acting in its sovereign capacity, as the State does here, there is no requirement that the State prove any damages at all; only a violation of Connecticut's deceptive or unfair trade practice standards. See State v. Acordia, 2008 Conn. Super. LEXIS 1791, at *12 (holding that § 110m "contains no requirement that 'ascertainable loss' be either pled or proved."); State v. Acordia, 2010 Conn. Super. LEXIS 800, * 9, *22-23 (Conn. Super. Ct. April 19, 2010) (finding CUTPA violation where state did not show harm to consumers) (copy attached as Ex. N); see

also Conn Gen. Stat. § 42-110m ("Proof of public interest or public injury shall not be required in any action brought pursuant to . . . this section.")

    d.    Even If The Complaint Could Be Construed As Seeking Partial Private Relief, Connecticut Still Has An Independent Quasi-Sovereign Interest In The Well-Being Of Its Populace And The Honest Operation Of Its Markets.

Even if the State's Complaint could be construed as seeking relief on behalf of a subset of Connecticut citizens, the State still has a well recognized and distinct quasi-sovereign interest in the well-being of its populace and the honest operation of its markets. Therefore, Connecticut is not a nominal party in this action and diversity jurisdiction does not exist.

"[A] State has a quasi-sovereign interest in the health and well-being – both physical and economic – of its residents in general." Snapp, 458 U.S. at 607. "Quasi-sovereign interests ... are not sovereign interests, proprietary interests, or private interests pursued by the State as a nominal party." Id. at 602. A state also has a substantial quasi-sovereign interest in securing a fair and honest marketplace for its citizens. Mississippi v. Microsoft Corp., 428 F. Supp. 2d 537, 545 (S.D. Miss. 2006) (holding that "the State has a quasi-sovereign interest in the economic well-being of its citizens, which includes securing the integrity of the marketplace"); Wisconsin v. Abbott Labs, Inc., 341 F. Supp. 2d 1057, 1063 (W.D. Wisc. 2004) (holding that Wisconsin's lawsuit "is aimed at securing an honest marketplace, promoting proper business practices, protecting Wisconsin consumers and advancing plaintiff's interest in the economic well-being of its residents"); Maine v. Data Gen'l Corp., 697 F. Supp. 23, 25 (D. Me. 1988) (stating that "[a] state's interest in maintaining an honest marketplace is a quasi-sovereign interest, even where the state's action will also benefit individuals"); Alabama v. Star Serv. & Petroleum Co., 616 F. Supp. 429, 431 (S.D. Ala. 1985) (stating that "[t]he state of Alabama has an interest in preventing unfair or dishonest competition, monopolies, and price wars. . . . This is obviously a

'quasi-sovereign' interest in which the state is the real party in interest"); General Motors Corp., 547 F. Supp. at 705-06 (stating that "[t]he State's goal of securing an honest marketplace in which to transact business is a quasi-sovereign interest. . . . As such, it is sufficient to preclude characterizing the state as a nominal party without a real interest in the outcome of this lawsuit").

Here, the State alleges S&P intentionally misrepresented that the ratings it assigned to structured finance securities were objective, independent and not influenced by either S&P's or its clients' financial interests. See Compl. at ¶¶ 1, 101-142. In short, the State alleges that S&P intentionally and knowingly offered a product or service that was materially different from what it purported to provide to the marketplace. See Compl. at ¶ 11. Thus, even if the State's Complaint could be construed as demanding relief on behalf of a subset of Connecticut citizens, the State's independent quasi-sovereign interest in the non-fraudulent operation of its markets makes the State more than a nominal party to this action. As the District Court for the Southern District of New York explained in an analogous case:

> Recovery of damages for aggrieved consumers is but one aspect of the [State's] case. The focus is on obtaining wide-ranging injunctive relief designed to vindicate the State's quasi-sovereign interest in securing an honest marketplace for all consumers. That recovery on behalf of an identifiable group is also sought should not require this Court to ignore the primary purpose of the action and to characterize it as one brought solely for the benefit of a few private parties. . . . This is, in all respects, the State's action. It is the State's quasi-sovereign interest that is being protected in this action. It is the State . . . that controls this action. . . . It is the State that will be bound by the results of this action. It is, therefore, logical to conclude that the State is not merely a nominal party.

General Motors Corp., 547 F. Supp. at 706-07; see also Hood v. Microsoft Corp, 428 F. Supp. 2d 537, 546 (S.D. Miss. 2006) (citations omitted) (finding that "The fact that private parties may benefit monetarily from a favorable resolution of this case does not minimize nor negate [Mississippi's] substantial interest"); Texas v. Merck & Co., 385 F. Supp. 2d 604, 607 (W.D.

Tex. 2005) (holding no diversity jurisdiction over Texas when suing to enforce state statute); Harvey v. Blockbuster, Inc., 384 F. Supp. 2d 749, 754-55 (D.N.J. 2005) (diversity lacking because "it is obvious that the State's interest in this lawsuit extends beyond vindicating the rights of one individual."); West Virginia v. Minnesota Mining & Mfg. Co., 354 F. Supp. 2d 660, 664 (S.D. W.Va. 2005) ("If the state is considered a real party in interest, complete diversity is absent"); Abbott Labs, Inc., 341 F. Supp. 2d at 1063 (the state's lawsuit "is aimed at securing an honest marketplace, promoting proper business practices, protecting Wisconsin consumers and advancing plaintiff's interest in the economic well-being of its residents. . . . The fact that private parties may benefit monetarily from a favorable resolution of this case does not minimize or negate plaintiff's substantial interest"); Missouri v. Freedom Fin. Corp., 727 F. Supp. 1313, 1317 (W.D. Mo. 1989) (finding the state's interest in the lawsuit "sufficient to preclude characterizing the State as a nominal party without a real interest in the outcome of this lawsuit. The Court makes this finding in spite of the fact that many of the interests being asserted by the State of Missouri in this suit are obviously actually those of people who have had business dealings in the past with the defendants"); Missouri v. Best Buy Co., Inc., 715 F. Supp. 1455, 1457 (E.D. Mo. 1989) (holding that there is no diversity jurisdiction over state when Attorney General authorized to bring suit on behalf of, and in the name of, the state to enforce a statute); Data Gen'l Corp., 697 F. Supp. at 25 (finding diversity jurisdiction lacking over state plaintiff bringing claims in quasi-sovereign and representative capacities: "[a] state's interest in maintaining an honest marketplace is a quasi-sovereign interest, even where the state's action will also benefit individuals"); Star Serv. & Petroleum Co., 616 F. Supp. at 431 ("The state of Alabama has an interest in preventing unfair or dishonest competition, monopolies, and price wars. . . . This is obviously a 'quasi-sovereign' interest in which the state is the real party in interest. . . . Whether

other parties will benefit from this action does not affect the state's valid interest in enforcing this statutory scheme"); Kentucky v. Marathon Petroleum Co., LLC, 2007 U.S. Dist. LEXIS 74117, at *14 (E.D.Ky. Oct. 3, 2007) (copy attached as Ex. O) ("While the Attorney General does also seek restitution on behalf of particular consumers, this is only one aspect of the wide-ranging relief sought, the substantial portion of which will benefit all Kentucky consumers. Viewing the complaint as a whole, the state is the real party in interest in this matter").

  e. CAFA Does Not Apply To State Enforcement Actions.

CAFA does not support removal of this case. CAFA expressly exempts civil actions brought on behalf of the general public and CAFA's legislative history makes clear that CAFA does not apply to state enforcement actions brought by Attorneys General.

S&P appears to rely on the definition of a "mass action" under CAFA in its notice of removal. See Notice of Removal at ¶¶ 8-10. 28 U.S.C. 1332(d)(11)(B)(ii) provides in relevant part: "…the term 'mass action' shall not include any civil action in which . . . all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action." In paragraph 13 of its complaint, the State alleges that it "brings this action in its sovereign enforcement capacity pursuant to Conn. Gen. Stat. 42-110m at the request of Jerry Farrell, Jr., Commissioner of the Department of Consumer Protection for the State of Connecticut." See also S&P I, 664 F. Supp. 2d at 202; Guy Carpenter, Hearing Tr. Ex. A. at 58. The State's sovereign status in this suit is further confirmed by the fact the State (1) sues in its own name, (2) seeks injunctive relief to stop ongoing violations and force compliance with Connecticut law, (3) seeks to punish current and deter future violations of Connecticut law by depriving the wrongdoers of the fruits of their illegal conduct, (4) sues to deter conduct that has a direct and tangible impact

on all Connecticut citizens, and (5) seeks civil penalties payable to the State. In short, in seeking to enforce the laws of Connecticut, the State's claim against S&P is brought on behalf of the general public and, therefore, does not qualify as a "mass action" under CAFA.

Additionally, the legislative history of CAFA states that the Act was not intended to apply to actions brought by state attorneys general. See Harvey v. Blockbuster, Inc., 384 F. Supp. 2d 749, 752-554 (D.N.J. 2005) (surveying the legislative history of CAFA and concluding that it was not Congress' intent to encroach upon state attorneys general lawsuits by enacting CAFA); S&P I, 664 F. Supp. 2d at 202 (relying on Harvey v. Blockbuster and holding that CAFA does not apply to Connecticut's municipal bond case against S&P.); Guy Carpenter, Hearing Tr. Ex. A. at 58. As stated by Senator Charles Grassley in debating CAFA:

> State attorneys general have authority under the laws of every State to bring enforcement actions to protect their citizens. Sometimes these laws are *parens patriae* cases, similar to class actions in the sense that the State attorney general represents the people of that State. In other instances, their actions are brought directly on behalf of that particular State. But **they are not class actions**; rather, they are very unique attorney general lawsuits authorized under State constitutions or under statutes…. [B]ecause almost all civil suits brought by State attorneys general are *parens patriae* actions, similar representative suits or direct enforcement actions, it is clear that they do not fall within this definition. That means that **cases brought by State attorneys general will not be affected by this bill.**

Blockbuster Inc., 384 F. Supp. 2d at 753 citing Cong. Rec. S1157-02 at S1163 (statement of Sen. Grassley) (emphasis in original). This view was echoed by Senator Orin Hatch. See id. at 754 citing 151 Cong. Rec. S1157-02, at S1163-65 (statement of Sen. Hatch) ("[L]et me be perfectly clear that [state attorney general actions] are not class actions... As such, [CAFA] **in no way effects these lawsuits.**") (emphasis in original).

f.  There Is No Objectively Reasonable Basis For Removal

The same arguments S&P makes here have already been rejected twice by courts in this district and the Second Circuit has twice refused invitations to review those district court decisions. Thus, S&P had no objectively reasonable basis to remove this case and this Court should exercise its discretion to award the State the fees and costs of litigating this motion.

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). A court may exercise its discretion to award fees and costs "where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). The "objectively reasonable" standard recognizes the purposes of the removal statute – to deter improper removals sought merely to prolong and delay the litigation and impose costs on the opposing party. Martin, 546 U.S. at 140. Such awards of fees and costs "do not require a showing of bad faith removal," but merely the lack of an objectively reasonable basis. Ins. Co. of Pennsylvania v. Waterfield, 371 F. Supp. 2d 146, 151 (D. Conn. 2005) (JBA) (citing Morgan Guaranty Trust Co. v. Republic of Palau, 971 F.2d 917, 923 (2d Cir. 1992).

Here, S&P lacked an objectively reasonable basis for removal. In light of Judge Thompson's and Judge Droney's decisions in S&P I and Guy Carpenter and the Second Circuit's refusal to review those decisions, S&P had no objectively reasonable basis to argue that the State was only a nominal party in this case. S&P's continued pursuit of removal in the face of prior adverse rulings on the exact same legal issues presented here[4] demonstrates that S&P seeks only

---

[4]  Indeed, given the similarity in the State's cause of action in the instant case as compared to S&P I and the identical nature of the legal issues prompting the State's motion for remand, S&P should be collaterally estopped from raising the same arguments here. See Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 91 (2d Cir. 1997) ("A party is collaterally estopped from raising an issue in a proceeding if: (1) the identical issue was

to prolong this litigation and impose costs on the State – improper purposes that the district court should deter by exercising its discretion to award the State costs and fees under § 1447(c).

## IV.  CONCLUSION

For all the foregoing reasons, diversity jurisdiction does not exist in this case and CAFA is inapplicable. The State's Motion for Remand and for Costs and Fees should be granted and this matter remanded to the Connecticut Superior Court for the Judicial District of Hartford.

```
                                     PLAINTIFF
                                     STATE OF CONNECTICUT

                                     RICHARD BLUMENTHAL
                                     ATTORNEY GENERAL


                              BY:    /s/ George W. O'Connell
                                     Matthew J. Budzik (ct19706)
                                     Matthew.Budzik@po.state.ct.us
                                     George W. O'Connell (ct27457)
                                     George.O'Connell@po.state.ct.us
                                     Laura J. Martella (ct27380)
                                     Laura.Martella@po.state.ct.us
                                     Assistant Attorneys General
                                     55 Elm Street, P.O. Box 120
                                     Hartford, CT  06141-0120
                                     Tel: (860) 808-5040
                                     Fax: (860) 808-5033
```

---

raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."

## CERTIFICATION

I hereby certify that on May 7, 2010 a true and accurate copy of the foregoing Memorandum in Support of Motion for Remand was filed electronically. Parties may access this filing through the Court's system. Notice of this filing will be sent by e-mail to the following parties of record, by operation of the Court's electronic filing system. Pursuant to the Court's standing order on electronic filing, a courtesy paper copy of this motion will also be sent to chambers by first-class mail, postage prepaid:

**Steven D. Ecker**
**William J. Gullotta**
Cowdery, Ecker & Murphy
280 Trumbull Street
Hartford, CT 06103
Tel: 860-278-5555
Fax: 860-249-0012
Email: ecker@cemlaw.com
Email: wgullotta@cemlaw.com

**Floyd Abrams**
**Adam Zurofsky**
**Tammy L. Roy**
Cahill Gordon & Reindel LLP
Eighty Pine Street
New York, NY 10005-1702
Tel: 212-701-3000
Fax: 212-378-2712
Email: fabrams@cahill.com
Email: azurofsky@cahill.com
Email: troy@cahill.com

/s/ George W. O'Connell
George W. O'Connell
Assistant Attorney General