## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| STATE OF CONNECTICUT, | CIVIL ACTION NO. |
| Plaintiff, | 3:10-CV-00546 (JBA) |
| | LEAD |
| v. | |
| MOODY'S CORPORATION and MOODY'S | JUNE 7, 2010 |
| INVESTORS SERVICE, INC., | |
| Defendants. | |

## MOODY'S DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND AND FOR COSTS AND FEES

Defendants Moody's Corporation and Moody's Investors Service, Inc. (together, "Moody's") respectfully submit this Memorandum of Law in opposition to the State of Connecticut's Motion to Remand and for Costs and Fees dated May 7, 2010 ("Pl.'s Br.").[1]

## PRELIMINARY STATEMENT

It is well-settled – indeed, not disputed by the State of Connecticut (the "State") – that insofar as a state seeks relief, not for its own behalf or for the benefit it its citizenry as a whole, but rather for individual citizens, the state takes on the citizenship of those individuals for purposes of the diversity jurisdiction of the federal courts. The mere fact, in other words, that the State has legislatively granted itself standing to sue for such relief does not, *ipso facto*, transform such a claim into an exercise of sovereign or quasi-sovereign power or deprive this Court of jurisdiction. It is, rather, the province (and duty) of this Court to assess the real nature of the

---

[1] Moody's Investors Service, Inc., a subsidiary of Moody's Corporation, is the only entity that issues securities ratings, and is thus the only proper defendant. The distinction between the two entities, however, is not material to the issues presented by this motion, and "Moody's" will be used herein to refer to both.

**ORAL ARGUMENT REQUESTED**

claims brought and the relief sought, and to exercise the jurisdiction granted to it by Congress, regardless of the State's attempts, through artful pleading, to evade it.

The complaint filed by the Attorney General in this matter asserts that Moody's has violated the Connecticut Unfair Trade Practices Act ("CUTPA"), C.G.S. § 42-110a et seq., by allegedly misrepresenting that its rating of securities – in particular, those relating to structured transactions – are the product of an objective and impartial process.  These charges are completely false: Moody's ratings are, and have at all times been, the genuinely held opinions of the rating committees that issue them, and Moody's maintains strict internal procedures to insulate its ratings process from potential conflicts of interest.  And to the extent that the State's claims rest on the fact that Moody's is paid by the issuers of the securities it rates, that fact is fully disclosed and well-known to the consumers of Moody's ratings.

There is, in short, no merit whatsoever to the State's charges, nor to its claims that purchasers of structured investment products in Connecticut have been harmed by these alleged misrepresentations.  While the merits (as well as the legal sufficiency) of the State's claims are not before the Court, however, these claims of harm, and the remedies sought for them, are relevant to the Court's task on this motion.  For the State has expressly chosen to seek an order of restitution – relief that could *only* mean a request to return property or money allegedly gained by Moody's from the investors purportedly harmed by its alleged CUTPA violations.  It is this restitutionary remedy that is clearly being sought on behalf of individuals, not the State itself or its populace as a whole, and that creates a dispute between these particular citizens of Connecticut and Moody's for purposes of diversity jurisdiction, both under traditional diversity principles and under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

2

Moody's is not, as the state would have it, "recharacterizing" the factual allegations in the complaint.  While the prerogative of the State to regulate Moody's ratings process in the manner it is attempting herein is extremely doubtful – as Congress has expressly preempted the states from such regulation – and thus as applied here CUTPA is not a legitimate exercise of the State's sovereign powers, it is unnecessary for the Court to make a definitive finding that none of the requested relief is in defense of quasi-sovereign interests.  Because even if it is, the fact that some of the relief is properly described as quasi-sovereign does not entitle the State to extend this description to – to itself "recharacterize" – the relief sought on behalf of individual investors.  And it is this relief, properly seen for what it really is – a claim on behalf of those citizens of Connecticut against Moody's as a non-citizen, that provides sufficient grounds for this Court's jurisdiction.  The motion to remand, therefore, should be denied.

## ARGUMENT

**I.    To the Extent the State Seeks Relief on Behalf of a Subset of its Citizens, As it Does Here, Those Citizens are the Real Parties in Interest**

While it is true that a state, suing *qua* state, is not deemed a "citizen of a State" for purposes of the diversity jurisdiction statute, it is equally true that where the state has brought a claim for recovery not for itself or its population as a whole, but rather on behalf of particular citizens, those citizens are the real parties in interest whose citizenship is deemed controlling. This principle was stated most clearly by then-District Judge Jon Newman in State of Connecticut v. Levi Strauss & Co., 471 F. Supp. 363 (D. Conn. 1979), and has been repeatedly reaffirmed by the courts in this district.  See State of Connecticut Comm'r of Labor v. AT&T Corp., No. 3:06CV01257, 2006 WL 3332982, at *1-2 (D. Conn. Nov. 16, 2006) (Thompson, J.); see also Butler v. Cadbury Beverages, Inc., No. 3:97-CV-2241, 1998 WL 422863, at *2 (D. Conn. July 1, 1998) (finding the "scholarly analysis of then-District Judge Newman" to be

"correct" and controlling). Even Judge Thompson, in his order remanding the State's

previously-filed case against Moody's, reaffirmed that <u>Levi Strauss</u> correctly states the law in

this respect. <u>See</u> <u>State of Connecticut v. Moody's Corp.</u>, 664 F. Supp. 2d 196, 200-01 (D. Conn.

2009) ("<u>Moody's I</u>").[2]

     In <u>Levi Strauss</u>, the State of Connecticut brought suit in Connecticut Superior Court

against defendant Levi Strauss alleging a violation of the Connecticut Antitrust Act. 471 F.

Supp. at 365. Levi Strauss removed, and the State moved to remand for lack of subject-matter

jurisdiction. <u>Id</u>. After determining that there was no federal-question jurisdiction, Judge

Newman turned to the issue of whether diversity jurisdiction existed under 28 U.S.C. § 1332.

     Judge Newman first noted that the State in that case sought "four types of monetary

awards" based on the alleged antitrust violation. <u>Id.</u> at 370. The "basic claim," he said, was for

"recovery of the alleged unlawful overcharges incurred by the citizens of Connecticut who

purchased Levi Strauss products. Connecticut intends to return the overcharges to all identifiable

purchasers." <u>Id.</u> The State also sought three other types of relief: recovery of overcharges by

unidentifiable purchasers; civil penalties per the Connecticut Antitrust Act; and attorneys' fees.

     While acknowledging that a state cannot be a "citizen of a state" for diversity purposes,

Judge Newman also rejected the notion that the mere presence of the State as nominal plaintiff

precludes diversity jurisdiction. Rather, said the Court:

> If Connecticut were suing as Parens patriae for the benefit of all of
> its citizens, its capacity would be essentially sovereign, and it
> would not be a citizen for diversity purposes. But it has long been
> recognized that a state can act as Parens patriae for a circumscribed

---

[2] While Judge Droney, in his oral decision ordering remand in <u>State of Connecticut v.</u>
<u>Guy Carpenter & Co. LLC</u>, No. 3:07CV162 (Feb. 9, 2009) (Pls.' Br. Ex. A), described the
discussion in <u>Levi Strauss</u> as "dicta," <u>id.</u> at 54, he nevertheless reaffirmed the basic principle that
where the State sues on behalf of a subset of citizens, diversity jurisdiction may exist based on
the citizenship of those real parties in interest, <u>id.</u> at 52.

> group of its citizens. . . . Presumably, a state's role in suing on
> behalf of particular citizens sufficiently dispenses with its
> sovereign capacity not only to bar access to the Supreme Court's
> original jurisdiction but also to gain access to the district courts'
> diversity jurisdiction (assuming diverse citizenship of the
> defendant and jurisdictional amount).
>
> <u>When Connecticut claims refunds to be distributed to identifiable
> purchasers, the citizen status of the purchasers rather than the
> sovereign status of their benefactor controls for diversity purposes.</u>

<u>Id.</u> at 370-71 (citations omitted and emphasis added). Judge Newman went on, however, to note

that because none of the individual purchasers' overcharges would exceed $10,000 (then the

jurisdictional threshold), diversity jurisdiction would not lie. <u>Id.</u> at 371. He also examined the

other forms of relief sought by the State and determined that, although in excess of the $10,000

threshold, they were sought by the State in its "sovereign capacity." <u>Id.</u> Accordingly, said the

Court, "as to no one element of its money claim can Connecticut simultaneously satisfy the

citizenship and jurisdictional amount requirements," and thus remand was proper. <u>Id.</u>

The principle that the state, when it sues on behalf of an identifiable subset of its citizens,

takes on their citizenship for diversity purposes was similarly applied by Judge Thompson in

<u>AT&T</u>. There, the Connecticut Commissioner of Labor filed suit in Superior Court against

AT&T for recovery of alleged unpaid wages, statutory double wages, and attorneys' fees. 2006

WL 3332982, at *1. Following removal by the defendant, the Commissioner moved to remand.

The Court denied the motion. Following <u>Levi Strauss</u>, the Court held that because the

Commissioner was seeking to recover unpaid wages on behalf of three individuals (to whom the

wage recovery would be turned over), the State was acting "for a circumscribed group of its

citizens, and the citizen status of those individual citizens rather than the sovereign status of the

state, controls for diversity purposes." <u>Id.</u> at *2. Moreover, the State argued that the wage

statute it sued under was "a tool of public policy and the State of Connecticut has a real interest

5

in the enforcement of its wage and hour laws." <u>Id.</u> at *3.  Judge Thompson, however, rejected

that argument as

> fundamentally at odds with the analysis in <u>Levi Strauss</u> in that it
> would eliminate the well-recognized distinction between the
> situation where the state is suing as Parens patriae for the benefit of
> all its citizens and that where it is acting as Parens patriae for a
> circumscribed group of its citizens.  Therefore, the court finds this
> argument is unpersuasive.

<u>Id.</u>

Thus, the unexceptional fact that the State claims to be seeking to enforce its own laws

cannot, without more, be deemed dispositive of whether its claims also seek relief on behalf of

individuals rather than the State as a whole.  The State's own characterization of its complaint as

a "sovereign enforcement action" cannot control this Court's analysis.  <u>See</u> <u>Phillip Morris, Inc. v.</u>

<u>Blumenthal</u>, 123 F.3d 103, 106-07 (2d Cir. 1997) ("The mere fact that the state is involved as a

party does not transform the action into a "sovereign enforcement" proceeding."); <u>Louisiana ex</u>

<u>rel. Caldwell v. Allstate Ins. Co.</u>, 536 F.3d 418, 424 (5th Cir. 2008) ("It is well-established that

in determining whether there is jurisdiction, federal courts look to the substance of the action and

not only at the labels that the parties may attach.") (affirming denial of remand of action brought

by Louisiana Attorney General to enforce state antitrust laws);

## II.     The State is Seeking Restitution to Individual Consumers

The State, in its brief, repeatedly denies that it is seeking relief on behalf of any subset of

its citizens, claiming instead that Moody's has "mischaracteriz[ed]" the Complaint and that all

the State has done is recite the harm to Connecticut consumers.  (<u>See, e.g.,</u> Pl.'s Br. at 1-2.)

Judge Thompson, in remanding the <u>Moody's I</u> case, also relied on this description of Moody's

argument.  <u>See</u> 664 F. Supp. 2d at 201.  But that was not the argument upon which Moody's

rested then, and it is not the argument now.

6

The point that the State purposely fails to address is that, as it did in the prior suit, the Complaint specifically seeks "an order . . . directing Moody's to pay restitution." (Compl. Prayer for Relief ¶ 5.) The State has – this time – been careful enough not to say *to whom* that restitution would be directed.[3] But the very nature of restitution as a remedy compels the conclusion that such relief would necessarily go – under the State's pled theory of the case – to the consumers who have allegedly been harmed by Moody's unfair practices (if to anyone, which Moody's disputes is warranted or legally available).

"Restitution is [a]n equitable remedy under which a person is restored to his or her original position prior to loss or injury …." DeMattia v. Mauro, 86 Conn. App. 1, 11, 860 A.2d 262, 268 (2004); see also United Coastal Indus., Inc. v. Clearheart Constr. Co., 71 Conn. App. 506, 512, 802 A.2d 901, 906 (2002) (defining restitution as "the restoration to a party of money, services or goods of which he or she was deprived that benefited another"); Aurigemma v. Arco Petroleum Products Co., 734 F. Supp. 1025, 1032 (D. Conn. 1990) (restitution under CUTPA "'attempt[s] to return to plaintiff what it lost as a result of defendants' actions.'") (quoting Grand Light & Supply Co. v. Honeywell, Inc., 771 F.2d 672, 681 n.3 (2d Cir. 1985)); Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213-14 (2002) ("Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to

_____

[3] In its original complaint filed in Moody's I, the state originally sought an order of restitution "to the State of Connecticut, its municipalities, and other public entities." Moody's I, 664 F. Supp. 2d at 198. These were the very entities, of course, which the State had claimed were harmed (due to increased borrowing costs) by the allegedly low ratings given to municipal bonds. The State then filed an amended complaint deleting the quoted phrase, and Judge Thompson accepted the State's claim that the original phrasing was merely a "scrivener's error." Id. The only "error," however, was the State's infelicitous (for purpose of avoiding removal) admission that it was seeking relief on behalf of, *inter alia*, its municipalities (i.e., citizens of the State of Connecticut). But it was, in fact, a telling phrase, in that it revealed the State's own understanding of the term "restitution" as a remedy requiring the return of property or money obtained by defendant from plaintiff. And in Moody's I, as here, the State has never suggested anyone else to whom an order of restitution could properly be directed.

restore to the plaintiff particular funds or property in the defendant's possession."). It is, in short, the very nature of restitution to <u>restore</u> to the plaintiff the property or money allegedly unjustly obtained by defendant.

Thus, the State's repeated arguments that restitution is meant "to deprive Moody's of the fruits of its illegal conduct," Pl.'s Br. at 13, are beside the point: no one disputes that the proper <u>measure</u> of restitution is the allegedly unjust gain obtained by the defendant from the plaintiff. The relevant question here, however – the question the State <u>never</u> answers in its brief – is <u>to whom</u> would Moody's allegedly unjust gains be restituted? To the State? But the State itself is not alleged to have been harmed by Moody's supposed CUTPA violations. The only harm discussed in the Complaint is that which allegedly was suffered by purchasers of structured finance investments who relied upon Moody's ratings. (<u>See</u> Compl. ¶¶ 5, 19, 56, 165.) It is beyond dispute that the Complaint asserts no claim that the State itself was a purchaser of these securities.[4]

The State, in its brief, has not cited to a single authority that suggests that an order of restitution under CUTPA (or under any statute, for that matter) could be made to the State itself rather than to the individuals allegedly harmed by the purported violation. In the only few available opinions in which the State apparently succeeded in obtaining an order of restitution under CUTPA, it was clear that such relief was limited to returning to specific individuals the amounts the defendant had gained from those individuals. <u>See</u> <u>State v. Cardwell</u>, 20 Conn. L. Rptr. 292, 1997 WL 466499, at *18-19 (Conn. Super. 1997) (restitution of ticket price overcharges to individual ticket purchasers), <u>aff'd in part</u>, 246 Conn. 721, 718 A.2d 954 (1998);

---

[4] At least in <u>Moody's I</u>, the State itself was alleged to have been an issuer of bonds that had been itself hurt by increased borrowing costs, and thus an order of restitution to the State itself was at least theoretically possible.

State v. Leary, 217 Conn. 404, 406, 587 A.2d 85, 86 (1991) (affirming trial court order "directing the defendants to pay restitution to consumers injured as a result of such sales").[5]

Contrary to the State's arguments, then – and, with all due respect, contrary to the description of Moody's arguments by Judge Thompson in Moody's I – Moody's is not attempting to "have descriptions of the impact of the defendants' alleged actions on particular persons treated as the assertion of claims on behalf of those persons."  (Pl.'s Br. at 11 (quoting Moody's I, 664 F. Supp. 2d at 201).)  It is the State itself that is seeking an order of restitution. And it is the very nature of restitution, coupled with the fact that it is individuals (here, structured finance investors who allegedly relied on Moody's ratings) – and not the State itself – that are alleged to have been harmed, that gives rise to the ineluctable conclusion that the State is seeking relief on behalf of those individuals. Thus, the Attorney General's statement that his "Complaint makes no . . . claim [for recovery on behalf of a subset of Connecticut citizens]" (Pl.'s Br. at 1) is simply false.

Nor does Moody's rely upon a finding that the State has no quasi-sovereign interest in the relief it seeks.  While Moody's believes that the State of Connecticut is clearly preempted from regulating either Moody's ratings methodology or Moody's purported conflicts of interest by the Credit Rating Agency Reform Act of 2006, 15 U.S.C. § 78o-7 ("CRARA"), and while Moody's

---

[5] An order requiring Moody's to pay over profits allegedly obtained as a result of the purported CUTPA violations, not to the consumers from whom such profits are claimed to have been obtained but, instead, to the State itself, would be properly characterized as a claim for disgorgement of profits.  And, indeed, the State makes precisely such a claim, separate and apart from its claim for restitution.  (See Compl. Prayer for Relief ¶ 6.)  Whether disgorgement is an available equitable remedy is highly doubtful.  See State v. Royal Fin. Servs., LLC, 2008 WL 4683861, at *4 (Conn. Super. 2008) (CUTPA's Attorney General suit provision "does not authorize the Court to order" disgorgement).  The fact that the State seeks both restitution and disgorgement is an admission that these two remedies are not identical.  And if "restitution" of profits could be made to the State rather than allegedly harmed individuals, then what difference is there between that and an order for disgorgement?

also believes that CUTPA itself does not reach the securities ratings activities that are the basis of the State's complaint, cf. Russell v. Dean Witter Reynolds, Inc., 200 Conn. 172, 175-84, 510 A.2d 972, 974-79 (1986), Moody's does not, for purposes of this motion, dispute at least the possibility that some of the relief sought could, if legally obtainable, be characterized as being sought in the State's quasi-sovereign capacity.  Even if true, however, that conclusion in no way alters the fact that the State also seeks relief for individual investor/consumers.  The State, in other words, may be deemed to be pursuing claims on behalf of individuals, as well as claims for its citizenry as a whole.  As shall now be seen, however, this "two-hat" status of the State does not deprive this Court of jurisdiction.

## III.  Jurisdiction is Proper Under the Class Action Fairness Act

Recently, Judge Brody of the Eastern District of Pennsylvania faced just such a situation. See State of W. Virginia ex rel. McGraw v. Comcast Corp., __ F. Supp. 2d. __, 2010 WL 1257639 (E.D. Pa. Mar. 31, 2010).  There, the state of West Virginia sued cable provider Comcast under the West Virginia antitrust and consumer protection statutes, alleging impermissible and unfair tying behavior with respect to the provision of set-top cable boxes.  The State sought damages, treble damages, restitution, disgorgement, civil penalties, an injunction and attorneys' fees.  See id. at *1.  Comcast removed under traditional diversity and CAFA grounds (both the "class action" and "mass action" provisions).  Finding jurisdiction proper under CAFA, the court denied the remand motion (without reaching the traditional diversity issue).  See id.

The court began with the question of whether minimal diversity existed, i.e., whether any plaintiff was a citizen of a different state than any defendant.  Because the state qua state is not a citizen, then minimal diversity cannot exist if the state is the only plaintiff.  Id. at *2.  However, the court recognized that it could not rely upon the State's own characterization, but instead must

determine whether "examining the 'essential nature and effect of the proceeding' reveals that the state should not be considered the only plaintiff."  Id. (quoting Ramada Inns, Inc. v. Rosemount Mem'l Park Ass'n, 598 F.2d 1303, 1306 (3d Cir. 1979)); see also Louisiana ex rel. Caldwell v. Allstate Ins. Co., 536 F.3d 418, 424 (5th Cir. 2008) ("[F]ederal courts look to the substance of the action and not only at the labels that the parties may attach.").  As the Comcast court summed it up, then:

> [I]f a state can demonstrate that, in bringing an action, it seeks only to protect the well-being of its residents in general, it has expressed a quasi-sovereign interest in the entire action.  If it has expressed such a comprehensive quasi-sovereign interest, it . . . is the sole real party in interest in the suit.  If the state is the sole real party in interest in an action, minimal diversity cannot exist.  Thus, the next step in the minimal diversity inquiry is to determine whether West Virginia is seeking only to protect its general citizenry or is also seeking relief on behalf of private individuals.

Id. at *3 (emphasis added).

The court then turned to a critical issue: whether, in assessing this question, it was proper to examine the complaint "on a claim-by-claim basis, or as a single inquiry that encompasses all the claims."  Id. at *4.  Noting that some courts had adopted a claim-by-claim approach in non-CAFA cases, while others (including many of the cases relied upon by the State), had adopted the "wholesale" approach, the court – relying in large part upon the Fifth Circuit's decision in Caldwell – determined that, at least as to CAFA, the purposes behind this expansion of federal jurisdiction counseled a claim-by-claim analysis.[6]  See id. at *4-6.  The court then examined the relief sought by West Virginia – including a claim for judgment under the State's CUTPA analog

---

[6] As Judge Brody noted, the intent of CAFA was to "'strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications.'"  2010 WL 1257639, at *5 (quoting S. Rep. No. 109-14, at 35).  This is precisely such a case.  The State of Connecticut's attempts to regulate Moody's ratings methodologies and its conflict-of-interest policies plainly have implications beyond Connecticut: Moody's ratings are disseminated widely throughout the nation (indeed, the world).  Congress' decision to itself regulate via the CRARA is a powerful indication that the issues raised in this action are of a federal nature.

"in favor of West Virginia consumers for restitution and/or excess charge damages in an amount equal to the increased cost paid for cable services resulting from the" consumer protection act violations, id. at *7 – and concluded that these consumers were real parties in interest, the presence of additional quasi-sovereign interests notwithstanding.  Accordingly, minimal diversity was present.  See id.[7]

So too here.[8]  As already discussed, to the extent the State here seeks an order of restitution, it is necessarily seeking relief on behalf of those investors whom it claims were misled by Moody's representations of independence in rating structured finance investments – exactly as West Virginia sought relief on behalf of cable consumers who had been allegedly overcharged by Comcast.  Thus, regardless of the fact that the State may also be seeking quasi-sovereign relief on behalf of its citizenry as a whole – if that were indeed true – minimal diversity is present.  And as the State does not dispute that the other elements of CAFA jurisdiction – numerosity and amount in controversy – are here satisfied, jurisdiction is proper under CAFA.[9]

---

[7] The court rejected the argument that West Virginia's statutory grant of authority to its Attorney General to pursue such relief as parens patriae rendered this relief quasi-sovereign in nature.  As the court explained, parens patriae is an issue of standing distinct from the real-party-in-interest analysis.  See id. at *7-8.

[8] There is no dispute that Moody's is incorporated in Delaware and has its principal place of business in New York, and is thus diverse from any Connecticut citizen.

[9] Moody's has removed this suit under the "mass action" grounds of CAFA, see 28 U.S.C. § 1332(d)(11).  (The Comcast court did not need to reach the question of whether the "mass action" provisions were satisfied.  See 2010 WL 1257639, at *1 n.1.)  The primary difference between the "class action" and "mass action" provisions is that a "mass action" need not be brought pursuant to any class-action procedure, but it must meet an additional numerosity requirement of involving "monetary relief claims of 100 or more persons."  28 U.S.C. § 1332(d)(11)(B)(i).  It could not seriously be claimed that there are fewer than 100 persons in Connecticut who – under the State's theory – were consumers of Moody's ratings and are thus those on whose behalf the State seeks restitution.  As for the $5 million amount in controversy, the State claims that in 2006 alone Moody's made over $800 million in revenue from rating structured finance securities.  (Compl. ¶ 18.)  While of course Moody's disputes that any of this

The State's argument that CAFA simply does not apply to actions brought by the Attorney General under CUTPA is refuted by the terms of CAFA itself.  As the State acknowledges, CAFA's "mass action" definition exempts "any civil action in which . . . <u>all</u> of the claims are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action." 28 U.S.C. § 1332(d)(11)(B)(ii)(III) (emphasis added).[10]  The inescapable conclusion from this language is that a civil action in which <u>some</u> of the claims (or even one claim) is asserted on behalf of individual claimants is not so exempted.[11]  Because the State does seek such relief in the form of restitution, this exemption does not apply, and jurisdiction under CAFA is therefore proper.

---

revenue was unjustly gained, it would appear clear that the State cannot dispute that, under its own theory, there is more than $5 million in controversy so as to satisfy 28 U.S.C. § 1332(d)(2).

    [10] It is the State's burden, as plaintiff, to "demonstrat[e] that remand is warranted on the basis of one of the enumerated exceptions" to CAFA jurisdiction.  <u>Greenwich Fin. Servs. Distressed Mortgage Fund 3 LLC v. Countrywide Fin. Corp.</u>, 603 F.3d 23, 26 (2d Cir. 2010).

    [11] The legislative history relied upon by the State, even if it could outweigh the statute's plain language (which it of course cannot, <u>see, e.g.</u>, <u>Peralta-Taveras v. Attorney Gen'l</u>, 488 F.3d 580, 584 (2d Cir. 2007)), does not support its position that Attorney General suits are, simply by dint of bring brought by the Attorney General, exempt from CAFA.  First, the discussion in <u>Harvey v. Blockbuster</u>, 384 F. Supp. 2d 749, 753 (D.N.J. 2005), involved the "class action," not "mass action" provisions.  Second, the legislative discussion clearly was about Attorney General suits brought on behalf of the citizenry as a whole, not where relief was also sought for individual citizens.  Indeed, the entire discussion was about <u>parens patriae</u> suits, which, as the <u>Comcast</u> court noted (citing <u>Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez</u>, 458 U.S. 592 (1982)), under the common-law required a quasi-sovereign interest, not relief on behalf of particular private parties.  <u>See</u> 2010 WL 1257639, at *3.

    Finally, as Judge Brody noted in <u>Comcast</u>, the floor debate history of CAFA is a wholly unreliable indicator of its interpretation; she chose instead to rely on the only formal legislative history (the report of the Senate Judiciary Committee), which requires that CAFA's class action provisions be "interpreted liberally."  <u>See id.</u> at *5 nn. 5, 6.

**IV.    Jurisdiction is Also Proper Under Traditional Diversity Standards**

Jurisdiction is likewise proper even under traditional, i.e., non-CAFA, diversity grounds. As an initial matter, even assuming the State is pursuing any relief legitimately deemed quasi-sovereign, that fact does not, by itself, negate the jurisdictional implications of the State's pursuit of relief on behalf of its individual citizens, because either (1) the State's claim on behalf of those citizens is by itself sufficient to support diversity jurisdiction (as implied by <u>Levi Strauss</u>), or (2) the relief sought on behalf of individual citizens predominates over that which would redound directly to the State's benefit.

That the mere request for relief on behalf of the State rather than an identifiable citizen does not defeat diversity is evident from the decision in <u>AT&T</u>.  There, while the Commissioner of Labor sought double wages on behalf of three individual employees, it also sought an award of attorneys' fees, which would unquestionably have gone to the State itself, not to the individual employees.  2006 WL 3332982, at *2; <u>see also</u> <u>Levi Strauss</u>, 471 F. Supp. at 372 (characterizing State's claim for attorney's fees as in its "sovereign capacity").  Nevertheless, Judge Thompson found that diversity jurisdiction existed and denied the Commissioner's motion for remand.

<u>Levi Strauss</u> implies, moreover, that where a state seeks relief on behalf of individual citizens, that fact <u>alone</u> is sufficient to support diversity jurisdiction regardless of the presence of other relief sought in a sovereign capacity.  First, Judge Newman states as much:  "[A] state's role in suing on behalf of particular citizens sufficiently dispenses with its sovereign capacity . . . to gain access to the district courts' diversity jurisdiction."  471 F. Supp. at 371.  Second, even though three of the four elements of the State's claim were deemed by Judge Newman to be relief sought in a sovereign or quasi-sovereign capacity, he found diversity lacking not for that reason but instead because of the failure of any individual relief to exceed the jurisdictional

14

threshold – an analysis that would have been utterly unnecessary if the State's sovereign relief itself negated jurisdiction.  Further, it is evident from his discussion that had the individual overcharges exceeded $10,000, jurisdiction would have been proper.  Under Levi Strauss, therefore, the fact that the State seeks relief on behalf of individuals supports diversity jurisdiction without regard to the extent to which other relief sought is in its sovereign or quasi-sovereign capacity.

Alternatively, even if the fact that the State seeks relief on behalf of identifiable citizens does not by itself require a finding of jurisdiction, the fact that such relief predominates over any sovereign or quasi-sovereign relief does.  Even in the cases cited to by the State, the courts looked to the primary or predominant nature of the relief sought by the State.  See, e.g., Hood v. Microsoft Corp., 428 F. Supp. 2d 537, 545-46 (S.D. Miss. 2006) (court must examine "State's interest in a lawsuit as a whole"); State of New York v. Gen'l Motors Corp., 547 F. Supp. 703, 707 (S.D.N.Y. 1982) (finding that "the focus is on obtaining wide-ranging injunctive relief" and examining the "primary purpose of the action").[12]  What these cases did not do was determine that the state's request for relief in its sovereign or quasi-sovereign capacity was, by itself, sufficient to preclude a finding of jurisdiction.  Indeed, as stated earlier, such a principle was implicitly rejected both by Judge Newman in Levi Strauss and by Judge Thompson in AT&T.

---

[12] See also Kentucky ex rel. Stumbo v. Marathon Petroleum Co., 2007 U.S. Dist. LEXIS 74117, at *11 (E.D. Ky. 2007) (court must look "at the complaint as a whole to determine whether the state is the primary beneficiary"); Wisconsin v. Abbott Laboratories, 341 F. Supp. 2d 1057, 1062 (W.D. Wis. 2004) (court must examine "state's interest in a lawsuit as a whole"); Missouri ex rel. Webster v. Best Buy Co., Inc., 715 F. Supp. 1455, 1457 (E.D. Mo. 1989) (assessing the "main focus" of the case); Missouri ex rel. Webster v. Freedom Fin. Corp., 727 F. Supp. 1313, 1317 (W.D. Mo. 1989) (citing to General Motors' discussion of the "focus" of case).  (Texas v. Merck & Co., 385 F. Supp. 2d 604 (W.D. Tex. 2005), Harvey v. Blockbuster, Inc., 384 F. Supp. 2d 749 (D.N.J. 2005), West Virginia ex rel McGraw v. Minnesota Mining & Mfg. Co., 354 F. Supp. 2d 660 (S.D.W. Va. 2005), and Alabama ex rel Galanos v. Star Service & Petroleum Co., 616 F. Supp. 429 (S.D. Ala. 1985), all cited by the Attorney General, are inapposite because the states there did not seek any relief on behalf of individual citizens.)

Here, although Moody's denies that it has violated CUTPA or that any Connecticut citizens (or the State itself) are entitled to recovery, it is clear that the relief sought by the State on behalf of investor/consumers is the predominant relief sought. The complaint's recitation of the revenues earned by Moody's from structured finance securities (in 2006, $800 million, (see Compl. ¶¶ 18, 47)) indicates the order of magnitude that the State is apparently seeking in restitution.[13] This surely predominates over any injunctive relief that the State seeks, and while the State also asks for civil penalties, the likelihood of recovery once again is remote: the State will have to show a "willful" violation by Moody's – i.e., that Moody's "knew or should have known that [its] conduct was a violation" of CUTPA. C.G.S. § 42-110o(b). Thus, even under a predominance analysis, diversity jurisdiction is present.

## V.   The State's Claim for Fees Should be Denied Even if This Action is Remanded

Finally, even should this Court determine that remand is proper, it is evident that the State's request for fees is not justified. The authority of, inter alia, Comcast and Levi Strauss,

---

[13] As indicated supra n. 5, it is extremely doubtful that disgorgement of profits, other than as a restitutionary remedy to those from whom such profits were allegedly unjustly received, is available as an equitable remedy under CUTPA, which only allows the Attorney General to seek equitable relief. See C.G.S. § 42-110m(a). The Second Circuit's decision in FTC v. Verity Int'l, 443 F.3d 48 (2d Cir. 2006), is instructive. Construing the analogous Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) – interpretations of which CUTPA makes expressly applicable as a guide, see C.G.S. § 42-110b(b) – the court held that relief in restitution or disgorgement in a suit brought by the FTC, assuming (without deciding) that it was available at all, was limited to equitable relief, and thus only equitable, not legal, restitution. See 443 F.3d at 66-67. "Equitable restitution allow[s] the plaintiff to recover money or property in the defendant's possession that could 'clearly be traced' to money or property 'identified as belonging in good conscience to the plaintiff.'" Id. (quoting Great-West Life, 534 U.S. at 212). Vacating the district court's determination, the Second Circuit held that the restitution or disgorgement order could extend to any payments made by plaintiffs only insofar as such payments actually were received by the defendant, and that the court could not include payments that were made to "some middleman not party to the lawsuit." Id. at 68; see also L-3 Commc'ns Corp. v. OSI Sys., Inc., 2004 WL 42276, at *8 (S.D.N.Y. 2004) (non-restitutionary disgorgement not available under California unfair practices act). Moody's has been unable to uncover any case in which disgorgement of profits to the State was ordered under CUTPA.

16

even should this Court be otherwise persuaded, provide a more than ample "objectively reasonable basis" for the removal, and thus the extraordinary remedy of awarding fees is not warranted.  See Martin v. Franklin Capital Corp., 546 U.S. 132, 140-41 (2005).  The fact that Judge Thompson remanded in Moody's I – on a completely different complaint – cannot render Moody's removal in this case objectively unreasonable, even if Judge Thompson's decision were binding law in this court, which of course it is not.  Likewise, the Second Circuit's decision not to hear the appeal from remand in that case expressed no opinion on the merits, and the Second Circuit has certainly not spoken authoritatively on the issues in this case.

## CONCLUSION

For the foregoing reasons, this Court has subject matter jurisdiction, either under CAFA or under traditional diversity principles.  The State's motion to remand and for fees should, therefore, be denied in its entirety.

Respectfully submitted,

/s/ William M. Rubenstein
William M. Rubenstein (ct08834)
Axinn, Veltrop & Harkrider LLP
90 State House Square
Hartford, CT 06103-3702
Telephone:  860-275-8100
Facsimile:  860-275-8101
E-mail:  wmr@avhlaw.com

James J. Coster (admitted *pro hac vice*)
Joshua M. Rubins (admitted *pro hac vice*)
Satterlee Stephens Burke & Burke LLP
230 Park Avenue, 11th Floor
New York, NY 10169
Telephone:  212-818-9200
Facsimile:  212-818-9606/7
E-mail: jcoster@ssbb.com
         jrubins@ssbb.com

*Attorneys for Defendants*

17

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on June 7, 2010, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.


                         /s/ William M. Rubenstein
                         William M. Rubenstein