UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| State of Connecticut,<br>    *Plaintiff*,<br><br>    v.<br><br>Moody's Corporation, et al,<br>    *Defendants.* | Civil No. 3:10cv546(JBA)<br><br><br><br>January 5, 2011 |

RULING ON MOTIONS FOR REMAND AND FEES

The State of Connecticut brought two suits in state court, against Moody's Corporation and Moody's Investors service, Inc. (collectively "Moody's") and against McGraw Hill Co., Inc. and Standard & Poor's Financial Services, LLC (collectively "S&P"), under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, *et seq.*, seeking redress for Defendants' alleged business practices of misrepresenting the independence and objectivity of their ratings assigned to structured–finance securities, which the State claims constitute unfair or deceptive practices. Defendants removed to federal court on the basis of diversity jurisdiction, where both cases have been consolidated. Plaintiff now moves to remand the consolidated action and for costs and fees, claiming that because Connecticut has brought suit against Defendants in its sovereign and quasi–sovereign enforcement capacities pursuant to express statutory authority, it is the real party in interest, thus there is no diversity jurisdiction. For the following reasons, Plaintiff's motions to remand will be granted, but Defendants will not be ordered to pay attorneys costs and fees.

I.  Background

At the request of the Commissioner of the Connecticut Department of Consumer Protection, the State of Connecticut brought these CUTPA actions against Defendants in Connecticut Superior Court, alleging that Defendants, credit–rating agencies[1] that regularly provide credit ratings on residential mortgage backed securities ("RMBSs") and collateralized debt obligations ("CDOs"), regularly and falsely made public representations—routinely relied on by investors and other participants in the financial markets within the State of Connecticut—that their ratings on structured–securities are independent, objective, and not influenced by either Defendants' or their clients' financial interest. Plaintiff contends that Defendants had a financial stake in assigning high ratings to securities in that high ratings would generate higher–volume trading in structured finance securities, which would positively affect Defendants' business. Plaintiff seeks a declaration that Defendants violated the Connecticut Unfair Trade Practices Act, an injunction prohibiting Defendants from continuing to engage in deceptive and unfair business practices, an accounting, restitution and disgorgement under Conn. Gen. Stat. § 42-110m, and civil penalties.

II.  Standard

"[T]he party asserting jurisdiction bears the burden of proving that the case is properly in federal court." *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). Thus, "'[w]here,

---

[1] "Credit rating agencies distinguish among grades of debt creditworthiness. In other words, a credit rating is a statement as to the likelihood that the borrower or issuer will meet its contractual, financial obligations as they become due." (Moody's Compl. [Doc. # 1] ¶ 50.)

as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper.'" *Calif. Pub. Emp.'s Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) (quoting *CenterMark Props.*, 30 F.3d at 301). The Court concludes that Defendants have failed to bear their burden, and the cases must be remanded to state court.

III.  Discussion

The State argues that diversity jurisdiction is lacking, both because it is a citizen of no state for diversity–jurisdiction purposes and because the Class Action Fairness Act does not confer federal court jurisdiction because it is inapplicable to state enforcement actions. Defendants argue that the State, by seeking restitution for individual citizens, takes on the citizenship of those individuals in the diversity–jurisdiction equation.

    A.    Diversity Jurisdiction[2]

The parties agree that "there is no question that a State is not a 'citizen' for purposes of . . . diversity jurisdiction," *Moor v. Cnty. of Alameda*, 411 U.S. 693, 717 (1973), and that a state may be a real party in interest insofar as it seeks relief on behalf of its citizenry as a whole. They disagree as to whether the State of Connecticut is a real party in interest to the extent it seeks restitution and as to whether the citizenship of Connecticut individuals who may be entitled to restitution should govern. "[T]he 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy," not merely nominal parties. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980).

---

[2] The parties do not dispute that the amount in controversy exceeds the $75,000 jurisdictional requirement. 28 U.S.C. § 1332(a).

Defendants contend that the State's prayer for relief, which includes restitution under Conn. Gen. Stat. § 42-110m, is necessarily brought on behalf of the subset of Connecticut residents who purchased securities rated by Defendants, rendering the State a nominal party and the individual Connecticut residents the real parties in interest, such that their citizenship controls and satisfies diversity requirements. Defendants rely on cases holding that so long as any relief is sought on behalf of individual citizens who have individual–enforcement rights, the jurisdiction of those citizens is determinative of whether there is diversity jurisdiction over the entire action. *See, e.g.*, *Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 429–30 (5th Cir. 2008) (Louisiana sued insurance company defendants for antitrust violations and in addition to injunctive relief, sought treble damages under § 138 of the Monopolies Act on behalf of "any person who is injured in his business or property," which the Fifth Circuit determined made these "individuals [who] have the right to enforce this provision" the real parties in interest for diversity jurisdiction purposes); *West Virginia ex rel. McGraw v. Comcast Corporation*, 705 F. Supp. 2d 441 (E.D. Pa. 2010) (individual Comcast cable subscribers were real parties in interest in suit brought by the state for injunctive relief and treble damages, where there were already "many private lawsuits . . . filed on behalf of Comcast's allegedly aggrieved premium cable subscribers . . . [that] suggests that the State's inherent *parens patriae* prerogative to prevent . . . injury to those who cannot protect themselves . . . is not implicated by the pursuit of treble and compensatory damages" (internal quotations omitted)); *Connecticut v. Levi Strauss & Co.*, 471 F. Supp. 363 (D. Conn. 1979) ("[A] state's role in suing on behalf of particular citizens sufficiently dispenses with its sovereign capacity not only to bar access to the Supreme

4

Court's original jurisdiction but also to gain access to the district court's diversity jurisdiction.").

The State responds that not only does it have an sovereign interest in enforcing its own laws, but it also has a "quasi–sovereign" interest in protecting all Connecticut citizens from Defendants' allegedly illegal conduct and deterring future violations of CUTPA, and therefore, it is the real party in interest, and there is no diversity of citizenship. Several courts departing from the approach urged by Defendants have examined the state's interest as a whole and have concluded that where a state seeks both relief on behalf of a subset of its citizens and injunctive relief, the state's quasi–sovereign interest renders it the real party in interest for determining jurisdiction. In *New York v. General Motors, Corporation*, a suit against General Motors for injunctive relief and restitution for fraudulent business practices under Section 63(12) of the New York Executive Law, the court determined the state to be the real party in interest because

> [r]ecovery of damages for aggrieved consumers is but one aspect of the case. The focus is on obtaining wide–ranging injunctive relief designed to vindicate the State's quasi–sovereign interest in securing an honest marketplace for all consumers. That recovery on behalf of an identifiable group is also sought should not require this Court to ignore the primary purpose of the action and to characterize it as one brought solely for the benefit for a few private parties.

547 F. Supp. 703, 705–06 (S.D.N.Y. 1982). *See also, e.g.*, *New York v. Charles Schwab & Co., Inc.*, No. 09cv7709(LMM), 2010 WL 286629, \* 6 (S.D.N.Y. Jan. 19, 2010) (where New York sought injunctive and restitutionary relief for alleged violations of its General Business Law, the state was the real party in interest, because it was "completely understandable that a state should, at the same time, seek to prevent the recurrence of harmful conduct in the future and to remedy the damage it has caused in the past"); *Hood ex rel. Mississippi v. Microsoft Corp.*,

428 F. Supp. 2d 537, 546 (S.D. Miss. 2006) ("the fact that private parties may benefit monetarily from a favorable resolution of this case does not minimize nor negate [the state] plaintiff's substantial interest," such that the state was the real party in interest); *Wisconsin v. Abbott Labs*, 341 F. Supp.2d 1057, 1062 (W.D. Wis. 2004) ("Defendants are correct that plaintiff appears to be wearing two hats by requesting relief for itself and for private parties, but that fact does not require this court to break the complaint apart along those lines for purposes of determining the real party in interest. On the contrary, most courts analyze real party in interest questions by examining the state's interest in a lawsuit as a whole.").

Here the State's stake in the litigation as a whole—including the restitution claim—is evidenced by Conn. Gen. Stat. § 42-110m, which explicitly authorizes the Attorney General to sue for injunctive relief and restitution "in the name of the state of Connecticut" when requested by the Commissioner of the Department for Consumer Protection. As in *General Motors Corp.*, in which New York had a statutory interest to "secur[e] an honest marketplace in which to transact business," 547 F. Supp. at 706, Connecticut has a statutory interest under CUTPA "to protect the public from unfair practices in the conduct of any trade or commerce," *Eder Bros., Inc. v. Wine Merchants of Connecticut, Inc.*, 275 Conn. 363, 380 (2005). It is noteworthy that the cases Defendants rely on, *Caldwell, Comcast*, and *Levi Strauss*, all involve state actions to secure damages or restitution explicitly on behalf of specific individuals, insurance policy holders, cable subscribers, and blue jeans purchasers respectively. Here, although the State alleges harm to individual citizens, its prayer for relief seeks only "[a]n order pursuant to Conn. Gen. Stat. § 42-110, directing [Defendants] to pay restitution," without specifying beneficiaries of that restitution, which the State argues may be ordered paid to the Connecticut Department of Consumer Protection's Consumer

Protection Enforcement Account "to fund positions and other related expenses for the enforcement of Department of Consumer Protection licensing and registration laws," Conn. Gen. Stat. § 21a-8a(a). Thus, far from Defendants' suggestion that the State is merely a nominal party in seeking restitution, the State is a real party in interest with an articulated "interest apart from the interests of particular private parties," *New York ex rel. Vacco v. Operation Rescue Nat'l*, 80 F.3d 64, 71 (2d Cir. 1996), by virtue of its statutory authority under § 42-110m to further the "well–being of its populace," *Snapp & Son, Inc. v. P.R.*, 458 U.S. 592, 602 (1982).

Where a state is a real party in interest, there is no diversity of citizenship, even if individual citizens are also real parties in interest, because 28 U.S.C. § 1332 requires complete diversity between the parties, "[t]hat is, diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. V. Kroger*, 437 U.S. 365, 374 (1978) (emphasis in original); *see also, e.g., Hood v. Hoffman–La Roche, Ltd.*, 639 F. Supp. 2d 25, 33 (D. D.C. 2009) (complete diversity lacking in state enforcement action seeking forfeiture, civil penalties, and compensatory damages for individual citizens, because the state was a real party in interest in addition to individual citizens); *Hood v. Astrazeneca Pharm. LP*, ---F. Supp. 2d----, No. 1:10CR104–SA–JAD, 2010 WL 3951906, * 3 (N.D. Miss. Oct. 7, 2010) (same). Thus, because the State of Connecticut is a real party in interest for purposes of determining jurisdiction because of its interests under Conn. Gen. Stat. § 42-110m, there is incomplete diversity of citizenship, and the Court lacks subject–matter jurisdiction under 28 U.S.C. § 1332(a).

B.      Class Action Fairness Act

Defendants also maintain that even if the Court lacks diversity jurisdiction, this matter is properly before it pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), which permits removal of certain class actions under 28 U.S.C. § 1453(b). CAFA defines the term "class action" to encompass a "mass action," *i.e.*, "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact."  28 U.S.C. § 1332(d)(11)(A), (B)(I). However, the term "mass action" "shall not include any civil action in which . . . all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action."  *Id.* at § 1332(d)(11)(B)(ii)(III).  Because the State is a real party in interest and sues to protect and vindicate the rights of its public in general under Conn. Gen. Stat. § 42-110m, this action is not a "mass action."[3]  *See, e.g.*,

---

[3] During debate on CAFA, Senator Grassley stated that

> State attorneys general have authority under the laws of every State to bring enforcement actions to protect their citizens. Sometimes these laws are parens patriae cases, similar to class actions in the sense that the State attorney general represents the people of that State. In other instances, their actions are brought directly on behalf of that particular State. But they are not class actions; rather, they are very unique attorney general lawsuits authorized under State constitutions or under statutes. . . .
>
> The key phrase there is "class action." Hence, because almost all civil suits brought by State attorneys general are parens patriae suits, similar representative suits or direct enforcement actions, it is clear they do not fall within this definition. That means that cases brought by State attorneys general will not be affected by this bill.

8

*Harvey v. Blockbuster, Inc.*, 384 F. Supp. 2d 749, 752–54 (D. N.J. 2005) (remanding state attorney general's suit against Blockbuster under the New Jersey Consumer Fraud Act for failing to clearly and conspicuously disclose the terms of Blockbuster's "No More Late Fees" policy, because the attorney general sued for civil penalties and injunctive relief on behalf of the general public). Given the nature of this action and the authority under which the State Attorney General brings it, CAFA does not confer subject–matter jurisdiction over this suit.

C. Attorneys Fees

Having prevailed on its motion for remand, the State also seeks an award of "just costs including attorney fees incurred as a result of the removal" 28 U.S.C. § 1447(c), claiming that Defendants had no objectively reasonable basis for removal. Plaintiff relies on the rejection by two other judges in this District of claims that the state was not a real party in interest for diversity purposes. *See Connecticut v. Moody's*, 664 F. Supp. 2d 196 (D. Conn. 2009); *Connecticut v. Guy Carpenter et al*, No. 3:07cv1627(CFD) (D. Conn. Feb. 9, 2009).

A court may exercise its discretion to award fees and costs "[w]here the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The Supreme Court has made clear that there is no presumption in favor of or against fee awards under 28 U.S.C. § 1447(c) but that assessing

---

151 Cong.Rec. S1157-02, at S1163 (statement of Sen. Grassley). Senator Cornyn added that as to "statutes that are typical of every State-deceptive trade practice acts and consumer protection statutes—which . . . specifically authorize the attorney general to seek remedies on behalf of aggrieved consumers," it was Congress's intent that "[t]his bill certainly . . . not encroach on that authority." *Id.* at S1162 (statement of Sen. Cornyn). *See id.* at S1160 (statement of Sen. Specter stating same).

9

such costs should recognize the purpose of disincentivizing use of removals as a method for delaying litigation or increasing costs on a plaintiff. *Id.*

The basis for removal set out in Defendants' removal petition, was "[t]o the extent the State of Connecticut seeks relief on behalf of identifiable and circumscribed group of Connecticut citizens, *i.e.*, the Connecticut consumers that have allegedly relied on [Defendants'] credit ratings of structured finance products." (Notice of Removal at 2.) Although the action is being remanded to state court, "lack of jurisdiction [is] not obvious from the face of the removal petition." *Albstein v. Six Flags Entertaining Corp.*, No. 10 Civ. 5840(RJH), 2010 WL 4371433, *4 (S.D.N.Y. Nov. 4, 2010) (citing *Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 331 (S.D.N.Y. 2007 ("Because this Court's lack of jurisdiction was not obvious from the face of the removal petition filed in the action, the Court cannot conclude that defendants lacked an objectively reasonable basis for seeking removal.")). As the foregoing caselaw discussion reflects, there are differing judicial approaches to characterizing the nature of a state's sovereign or quasi–sovereign interest for diversity purposes where a state seeks a monetary recovery including restitution, reflective of consumer harm, in its action to enjoin allegedly unlawful business practices impacting consumers. The existence of two other decisions in this District unfavorable to Defendants' position does not render the basis for Defendants' removal objectively unreasonable, in the absence of similar outcome in the Second Circuit. That Defendants continued to press their view of diversity jurisdiction in this case in reliance on other arguably supportive decisions, despite having previously failed to persuade another judge in this District in another CUTPA case brought against them by the Connecticut Attorney General, does not render their

articulated removal basis objectively unreasonable such that a fee award would be "just." Accordingly, Plaintiff's motion for attorney fees and costs will be denied.

III. Conclusion

Accordingly, Plaintiff's Motions to Remand and for Costs and Fees [Doc. ## 17, 23] are GRANTED in part and DENIED in part; Plaintiff's actions against Moody's and S&P are hereby ordered remanded to Connecticut Superior Court for the Judicial District of Hartford, but Defendants are not required to pay Plaintiff's attorneys fees and costs.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 5th day of January, 2011.